UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES DIXON,<br>    Plaintiff,<br><br>    v.<br><br>WARDEN SANTIAGO, *et al.*,<br>    Defendants. | No. 3:15-cv-1575 (JAM) |

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff James Dixon is a prisoner in the custody of the Connecticut Department of Correction (DOC) at the Corrigan-Radgowski Correctional Center in Uncasville, Connecticut. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. He contends that his constitutional rights were violated when he was subjected to three strip searches in the presence or view of other inmates and correctional officers who were not involved in the search. Based on my initial review pursuant to 28 U.S.C. § 1915A, I conclude that plaintiff's claim for money damages should be dismissed on qualified immunity grounds but that plaintiff's claim for declaratory and injunctive relief should proceed.

### BACKGROUND

Plaintiff names seven defendants in their individual and official capacities: Warden Santiago, Deputy Warden Martin, Lieutenant Bellamare, Captain Ogando and Correctional Officers John Doe #1, #2 and #3. Plaintiff contends that Bellamare and the Doe defendants subjected him to strip searches at the Corrigan-Radgowski Correctional Center in the view of other inmates and that defendants Santiago and Martin failed to address his complaints about these searches. Plaintiff principally seeks declaratory and injunctive relief to require proper training of correctional staff, as well as compensatory damages of $100,000 and punitive

damages of $25,000 from each of the defendants. The following allegations from plaintiff's amended complaint are accepted as true for purposes of the Court's initial review.

*The First Strip Search.* On August 27, 2015, during an emergency lock-down of the correctional facility, plaintiff was ordered to the gym with other inmates while the top tier cells were being searched. All of the inmates were strip searched. Plaintiff was searched in an area without dividers or screen. The search was visible by the other inmates being searched as well as by other correctional officers or inmates passing large windows in the area or waiting on the bleachers in the gym. Defendant Bellamare was supervising the strip searches, which were recorded on wall-mounted cameras. After the search, plaintiff was ordered to the bleacher area where he could view other inmates being strip searched.

After another inmate complained to defendant Deputy Warden Martin, defendant Martin stated that when he was in the military, he showered in front of other men. Defendant Martin also said that the searches in the gym would not occur again. No correctional officers were reprimanded for this incident.

*The Second Strip Search.* Early in the morning of September 10, 2015, as plaintiff was being prepared for a court transport trip, he was instructed to wait while two inmates were strip searched, one in the "strip room" and one in the open area of the "group room" where other correctional officers also were conducting searches. Plaintiff was directed to the open area, and he was strip searched in view of staff and other inmates. Inmates and staff were able to see into the group room through windows on two walls.

Plaintiff complained about this search to defendant Ogando. Although defendant Ogando stated that they would address the matter with his supervisors and assured plaintiff that no further

2

searches of this type would occur, plaintiff has not received a formal response. Plaintiff requested that video of the hallway be preserved. He received no response to this request.

*The Third Strip Search.* On November 3, 2015, plaintiff was ordered to the admitting and processing area for another court transport trip. Again, he was strip searched in the group room in front of the windows and in clear view of other inmates and correctional officers in the room. Plaintiff informed defendants Martin and Ogando of the improper search and continued violation of his rights. He was assured again that changes would be made.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). It is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

Not every violation of the Constitution may justify an award of money damages against a governmental official. That is because the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly

3

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see also Carroll v. Carman,* 135 S.Ct. 348, 351 (2014). As the Supreme Court has recently explained, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Richard,* 134 S.Ct. 2012, 2023 (2014).

Here, plaintiff contends that he was subjected to strip searches in violation of his constitutional rights to be free from unreasonable search and seizure under the Fourth Amendment, to be free from cruel and unusual punishment under the Eighth Amendment, and to his rights to due process under the Fourteenth Amendment. In addressing these claims, I start from the proposition that prison officials have a compelling interest in the detection of contraband and that strip searches may be justified by legitimate security and penological objectives. *See, e.g., Florence v. Board of Chosen Freeholders of County of Burlington*, 132 S.Ct. 1510, 1515-17 (2012). And the complaint makes clear that there were legitimate reasons that prompted each of the three strip searches at issue. The first search was in the context of an emergency lockdown, and the second two searches were in conjunction with plaintiff's departure from the facility for court transport trips. There is no allegation that the searches themselves were conducted for improper or prurient reasons.

Rather than contesting the basis for the strip searches, plaintiff objects to the fact that they were done in a manner that allowed him to be viewed by a video camera, viewed by other inmates, and viewed by correctional officers who were not involved with the strip search process. Numerous district courts in this Circuit have concluded that it does not violate the

4

Constitution for an inmate to be subject to a strip search within the view of other correctional officers or inmates who are not themselves involved in the search. *See, e.g., Smith v. City of New York*, No. 2015 WL 3929621, at *3 (S.D.N.Y. June 17, 2015); *Israel v. City of New York*, 2012 WL 4762082, at *3 (S.D.N.Y. 2012); *Miller v. Bailey*, 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008). In light of this precedent, it cannot be said that plaintiff's claim of constitutional right was clearly established and sufficient to overcome each of the defendant's entitlement to qualified immunity for purposes of plaintiff's claims for money damages against them.

Still, plaintiff seeks not only money damages but also declaratory and injunctive relief, and qualified immunity does not apply to a grant of declaratory and injunctive relief. *See Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013). Similarly, although the Eleventh Amendment forecloses plaintiff's money-damage claims against state prison officials insofar as they are sued in their official capacity, *see Kentucky v. Graham*, 473 U.S. 159, 169 (1985), it does not foreclose official-capacity lawsuits against state prison officials that seek injunctive relief arising from an ongoing violation of constitutional rights. *See, e.g., Va. Office for Prot. & Advocacy v. Stewart*, 131 S.Ct. 1632, 1638 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Accordingly, for purposes of plaintiff's claim for declaratory and injunctive relief, I must consider the merits of his legal claim, without the filter of legal deference that applies in the qualified immunity context to his claims for money damages. And despite the fact that plaintiff's claim has not found favor in other district courts of this Circuit, it does not appear that either the Second Circuit or the Supreme Court has decided whether prison officials—even when they have a legitimate security or penological purpose to conduct a strip search—retain unfettered

discretion to conduct strip searches in the view of video cameras, in the view of other inmates, or in the view correctional staff who are not involved in the search.

Because of the obvious humiliation that anyone may experience during the course of a strip search, it is unclear to me why an inmate should be subject (much less routinely subject) to the type of strip searches that plaintiff describes if it is easily possible and practicable for DOC officials to avoid these situations. After all, the Fourth Amendment protects against *unreasonable* searches and seizures, and if no reason at all justifies the strip search of an inmate in the view of or presence of others, then it is not clear why even minimal Fourth Amendment protections should not apply. *See Williams v. City of Cleveland*, 771 F.3d 945, 953, 955 (6th Cir. 2014) (concluding that complaint involving claim of strip searches of detainees in presence of other detainees stated plausible violation of the Fourth Amendment, while also noting that "the jail may have had good reasons for conducting these procedures in the particular manner in which it did" but "that is a matter for resolution either at trial or on summary judgment, not on the pleadings").

Indeed, the DOC's own administrative regulations makes clear that "[a]n inmate strip-search shall normally be conducted in an area out of view of individuals not involved in the search process…." State of Connecticut Department of Correction, Administrative Directive 6.7 (Aug. 15, 2014), available at http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0607.pdf (last accessed Dec. 3, 2015). Of course, the DOC's administrative regulation—like any administrative regulatory standard—does not itself determine what conduct is unconstitutional, because that is the function of the courts. But the fact that the DOC itself acknowledges that strip searches should not normally occur in the view of others who are not involved in the search process may

itself be some evidence that DOC is able to avoid non-private strip searches and that it should have reasons when it cannot do so.

Further, I will permit plaintiff's declaratory and injunctive relief claims against the three "John Doe" defendants. Plaintiff has sufficiently alleged facts to suggest that he was subject to unconstitutional strip searches by unnamed officers. The inclusion of these "John Doe" defendants is permissible at this time as placeholders for purposes of notice of the scope of plaintiff's claim and for conducting discovery in this action. *See, e.g., Abreu v. City of New York*, 657 F. Supp. 2d 357, 362-63 (E.D.N.Y. 2009). Plaintiff is cautioned, however, that he cannot ultimately obtain monetary relief against "John Doe" defendants, and he must diligently take steps to learn the identities of the "John Doe" defendants and to amend his pleadings to identify by name any person whom he seeks to hold liable for money damages.[1] *See, e.g., Hogan v. Fischer*, 738 U.S. 509, 517-20 (2d Cir. 2013).

## CONCLUSION

For the reasons set forth above, plaintiff's complaint for money damages is DISMISSED on the ground that it fails to allege facts to plausibly show that any of the defendants violated a clearly established constitutional right about which a reasonable correctional officer would have known. Plaintiff's complaint for declaratory and injunctive relief shall proceed.

In accordance with the foregoing analysis, the Court enters the following additional orders:

    (1)    The Clerk shall verify the current work address of defendants Santiago, Martin,

---

[1] Since filing the initial complaint (Doc. #1), plaintiff has identified one of the John Doe defendants as Lt. Bellamare. Doc. #8-1 at 2.

and Bellamare with the Department of Correction Office of Legal Affairs and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** from the date of this Order. The Clerk shall report to the Court the status of that waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshals Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(4) The Clerk shall send a courtesy copy of the complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint—either an answer or a motion to dismiss—within **sixty (60) days** from the date the waiver form is sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They may also include any and all additional defenses permitted by the Federal Rules of Civil Procedure.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change-of-address. Plaintiff should also notify defendants or their attorney(s) of his new address.

It is so ordered.

Dated at New Haven this 29th day of December 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge